UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHIRECE C.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 25-11554<br><br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 10, 15)**

## I. Introduction

Plaintiff Chirece C. appeals a partially favorable decision of Defendant Commissioner of Social Security (Commissioner) ruling on her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act (SSA). Both parties consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c) and move for summary judgment. ECF No. 7; ECF No. 10; ECF No. 15.

## II. Background

### A. Plaintiff's Background and Procedural History

Born in January 1969, plaintiff was 44 years old when she applied for DBI and SSI in September 2013, with an alleged disability onset date of September 1, 2012. ECF No. 6-2, PageID.117. She has a high school education and relevant past work as a motor vehicle assembler, production line welder, and screen printer. ECF No. 6-5, PageID.1959-1960. Her last date insured is December 31, 2017. *Id.*, PageID.1962.

Plaintiff's claims were initially denied on December 5, 2013. ECF No. 6-3, PageID.157, 161. After a hearing, an ALJ determined plaintiff was not disabled under the SSA. ECF No. 6-4, PageID.566. The Appeals Council declined review. *Id.*, PageID.572. Plaintiff then sought judicial review in this District, which resulted in an order remanding her case for further consideration of medical equivalence. *Id.*, PageID.519-541. On remand, the ALJ found plaintiff disabled, but only as of January 11, 2019. ECF No. 6-6, PageID.2042. Plaintiff filed written exceptions to the Appeals Council, but the Council declined to assume jurisdiction. *Id.*, PageID.2053. Plaintiff again sought judicial review, which resulted in another remand order. *Id.*, PageID.2065-2098. The ALJ was instructed upon remand to provide a more detailed explanation of the paragraph B criteria and step three

analysis, particularly regarding plaintiff's limitations in social functioning and adaptation. *Id.*, PageID.2097.

After another hearing below, the ALJ again concluded that plaintiff "was not disabled prior to January 11, 2019, but became disabled on that date and has continued to be disabled through the date of [her] decision" and plaintiff "was not under a disability within the meaning of the Social Security Act at any time through December 31, 2017, the date last insured."[1] *Id.*, PageID.1941. The Appeals Council again declined review, making the ALJ's decision the final decision of the Commissioner. ECF No. 6-5, PageID.1929-1932. Plaintiff timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial

[1] The ALJ did not disturb her prior decision finding plaintiff disabled as of January 11, 2019. ECF No. 6-5, PageID.1940 n.1.

gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC) and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled during the alleged onset period. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

onset date of September 1, 2012. ECF No. 6-5, PageID.1943. At the second step, the ALJ found that, since the alleged onset date, plaintiff had the following severe mental impairments: "anxiety; affective disorder; schizoaffective disorder; and bipolar disorder."[3] *Id*. Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.1944.

Between the third and fourth steps, the ALJ found that, since the alleged onset date, plaintiff had the RFC to perform sedentary work with the following mental limitations:

> [plaintiff] can understand, remember, and apply simple instructions; she can concentrate, persist, and maintain on pace by doing simple, routine tasks; she can do no fast-paced production work such as assembly line work or work with hourly quotas; she cannot perform tandem tasks; she can have occasional interaction with coworkers and no more than very brief (less than two minutes) superficial interaction with the public.

*Id.*, PageID.1949. At step four, the ALJ found that plaintiff cannot perform any past relevant work. *Id.*, PageID.1960. After hearing testimony from a vocational expert, the ALJ determined there were sedentary jobs in

---

[3] The ALJ also found that plaintiff had several severe physical impairments, but plaintiff does not challenge the ALJ's determinations about her physical impairments on appeal.

significant numbers that plaintiff could perform, including positions as a final assembler, sorter, and ink printer. *Id*., PageID.1960-1961.

## III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[4] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec*., 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because

[4] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff challenges the ALJ's determination that she was not disabled from the alleged disability onset date of September 1, 2012, through January 10, 2019, the last day the ALJ found plaintiff could work. She argues: (1) the RFC assessment is deficient and does not reflect the severity of her mental impairments; (2) the ALJ improperly gave little weight to her treating psychiatrist's medical-source opinion; and (3) the ALJ erroneously concluded that her mental impairments did meet or medically equal Listing 12.04. ECF No. 10, PageID.3625-3646.

The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff first contends that the ALJ's RFC assessment is deficient under Social Security Ruling (SSR) 96-8p and does not reflect the severity of her psychiatric impairments. ECF No. 10, PageID.3638-3642. She

maintains that greater restrictions are warranted, as the ALJ disregarded any limitations with respect to supervisor interactions in the RFC. *Id.*

The ALJ found that, before the established onset date, plaintiff had a "moderate-marked limitation" in her ability to interact with others, which includes "supervisors, co-workers, and the public." ECF No. 6-5, PageID.1947. As the ALJ explained:

> [Plaintiff] has indicated that she does not socialize much and that she does not like being bothered by others…. She has also indicated that she has problems getting along with family, friends, and neighbors; that she has a temper; and that she can snap and become belligerent quickly…. In mental status examinations, the [plaintiff] has been found with a fluctuating mood, with paranoid thoughts that people are talking about her and trying to hurt her, and as angry, demonstrating marked limitations in this category…. However, in other mental status examinations the [plaintiff] has also routinely been found as pleasant, as calm, as cooperative, with good humor, and without aggression, showing that she retains some abilities to relate to and interact with others.

*Id.*, PageID.1947-1948. The ALJ thus concluded that plaintiff had the RFC to perform sedentary work, but that "she cannot perform tandem tasks; she can have occasional interaction with coworkers and no more than very brief (less than two minutes) superficial interaction with the public." *Id.*, PageID.1949.

Plaintiff argues that her rapid mood fluctuations, irritability, emotional barriers, short temper, and paranoia warranted a more restrictive RFC.

ECF No. 10, PageID.3640-3641. She points to the January 2015 opinion of her treater, Sharon M. Bral, Ph.D.,[5] L.M.S.W., who determined that plaintiff had marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. ECF No. 6-3, PageID.476. Plaintiff claims that "[t]he ALJ's silence on supervisors—despite acknowledging 'moderate to marked' limitations in interacting with others—creates a material, unexplained gap" in the ALJ's reasoning. ECF No. 14, PageID.3684-3685. She says that "supervisors give criticism, enforce rules, and control hiring/firing," which may conflict with plaintiff's mental impairments. *Id.*, PageID.3684.

Because the ALJ "is charged with the responsibility" of determining the RFC, she need not base her RFC findings on a medical-source opinion. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (cleaned up). Instead, the ALJ must consider the record as whole in rendering their RFC assessment. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985); *see* SSR 96-8p, 1996 WL 374184, at * 7 (July 2, 1996).

[5] The parties refer to Dr. Bral as a psychiatrist, but she lacks a medical degree and thus cannot be a psychiatrist. *See* Am. Psychiatric Ass'n, https://www.psychiatry.org/patients-families/what-is-psychiatry (last visited Sept. 10, 2026).

Even so, an ALJ's decision must "provide an accurate and logical bridge between the evidence" and the RFC. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (cleaned up); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be building blocks of the [RFC] finding, but the [ALJ] must make a connection between the evidence relied on and the conclusion reached."). That is, the "ALJ must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning" to permit meaningful review. *Cortes v. Comm'r of Soc. Sec.*, No. 18-13347, 2020 WL 2812761, at *10 (E.D. Mich. May 29, 2020) (cleaned up).

The ALJ has done so here. As discussed more below, the ALJ gave Dr. Bral's opinion little weight, reasoning that her opinions were flawed in form, lacked medical explanations, and conflicted with the record as a whole. ECF No. 6-5, PageID.1957-1958. And though plaintiff does have a documented history of rapid mood fluctuations, irritability, emotional barriers, short temper, and paranoia, the ALJ determined plaintiff's RFC after considering plaintiff's many mental status examinations and her state agency psychological assessment. *Id.*, PageID.1947-1959.

As the ALJ explained, plaintiff's mental status examinations "routinely" found her "as pleasant, as calm, as cooperative, with good humor, and without aggression, showing that she retains some abilities to relate to and interact with others." *Id.*, PageID.1948. During her examinations, she "regularly" had a "normal mood, with a normal affect, with normal insight, with normal judgment, and [was] calm, all showing her abilities to regulate her emotions and control her behavior." *Id.* These mental status examinations supported the opinion of Kathy Morrow, Ph.D., who provided plaintiff's state agency psychological assessment. *Id.*, PageID.1957.

The ALJ accurately summarized Dr. Morrow's assessment and gave it more weight than she did to Dr. Bral's opinion, reasoning that "Dr. Morrow provided a thorough review of the medical record available to her at the time of the decision." *Id.* And while the ALJ "found some greater limitations based on additional evidence," she still concluded that "Dr. Morrow's opinion [was] otherwise consistent and supported by the overall mental health record." *Id.*

The ALJ then addressed the overall record and noted that, with medications, plaintiff had reduced complaints of paranoia and auditory hallucinations and denied behavioral issues or impulsivity.

*Id*. Social limitations were warranted because of her varying moods, but "there were many occasions where the [plaintiff] was pleasant and cooperative on examinations suggesting her ability to get along with others." *Id*. And records described "normal concentration, normal thought patterns, and normal speech all consistent with this mental assessment." *Id*. Finally, the ALJ limited plaintiff's "tandem tasks or fast-paced production work in consideration of updated medical records, mental status evaluations, and the [plaintiff]'s testimony as to her anger outbursts." *Id.*

In sum, the ALJ thoroughly discussed her reasoning for the RFC, and her reasoning is supported by substantial evidence. And plaintiff cites no authority supporting her position that the ALJ had to expressly mention her ability to interact with supervisors in the RFC.[6] Indeed, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite to specific evidence does not indicate that

[6] Plaintiff cites "*Henderson v. Comm'r of Soc. Sec.*, 2021 WL 1037723 (E.D. Mich. Mar. 17, 2021)," to support the proposition that "[c]ourts have repeatedly recognized that an inability to appropriately interact with supervisors can be dispositive of disability." ECF No. 10, PageID.3642. But that citation brings up an opinion and order denying a criminal defendant's motion for compassionate release. *See United States v. Williams*, No. 17-20179, 2021 WL 1037723 (E.D. Mich. Mar. 18, 2021). The Court will address this citation in a separate show cause order.

it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

The Court thus finds no reversible error.

**C.**

Plaintiff next contends that the ALJ failed to properly evaluate the treating-source opinion of Dr. Sharon Bral. ECF No. 10, PageID.3642-3644.

Since plaintiff's applications were filed before March 27, 2017, the ALJ was required to "give the opinion of a treating source controlling weight if [s]he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* 20 C.F.R. § 404.1527. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. But the "ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion

controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec*., 880 F.3d 778, 785 (6th Cir. 2017).

The ALJ accurately summarized Dr. Bral's January 2015 opinion. ECF No. 6-5, PageID.1957. Dr. Bral opined that plaintiff had "moderate limitations in the ability to remember locations and work-like procedures; the ability to understand and remember very short instructions; the ability to make simple, work-related decisions; and the ability to maintain socially appropriate behavior." *Id*. And Dr. Bral found plaintiff to have "marked limitations" in a host of other functions.

> [Plaintiff] would have marked limitations in the ability to understand and remember detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others; the ability to complete a normal workday and workweek; the ability to interact with the public; the ability to accept instructions and to respond to criticism; the ability to get along with co-workers; the ability to respond to changes in the work setting; the ability to be aware of normal hazards; the ability to travel in unfamiliar places; and the ability to set realistic goals.

*Id*.

In giving Dr. Bral's opinion little weight, the ALJ first explained that "Dr. Bral completed a fill-in-the-blank form" that failed "to provide explanations or medical support for her assessed limitations." *Id*., PageID.1957-1958. The ALJ then elaborated on her conclusions that Dr.

Bral's opinion was insufficiently supported, and that it contradicted her limited treatment notes and with the record as a whole:

> While Dr. Bral has a treating relationship with the [plaintiff] and her opinion is in her area of specialization, and while Dr. Bral includes a single treatment note with her opinion, the lack of supportability in the opinion for marked limitations, including the treatment note, greatly reduces the probative value of the opinion. Notably, while Dr. Bral does have a treating relationship with the [plaintiff] that treatment was inconsistent and includes frequent missed appointments and discharges. In her single treatment note, which is a re-initiation of services after they had been terminated for failing to keep appointments and where the [plaintiff] had been off her medications, the claimant was found living independently, supporting a teenage son, she was found as cooperative, she had normal speech, she denied perceptual disturbances, she had average intelligence, intact memory, she was alert, and she was oriented to person, place, and time which are inconsistent with the finding of marked or extreme limitations. Moreover, without explanation in support of her opinion I must compare it with the medical record as a whole which, as noted above, are not consistent with extreme or marked limitations. In particular, mental status examinations regularly found the [plaintiff] with a normal mood, with a normal affect, with normal insight, with normal judgment, as calm, as pleasant, as cooperative, with good humor, and without aggression.

*Id.*, PageID.1957-1958.

Plaintiff faults the ALJ for noting that plaintiff "sometimes missed appointments or was noncompliant with medication." ECF No. 10, PageID.3643. Plaintiff argues that noncompliance with psychiatric treatment is often a manifestation of mental illness and should not be used as a basis to discredit a medical opinion, citing *Blakenship v. Bowen* in

support. 874 F.2d 1116 (6th Cir. 1989). True, the court called it a "questionable practice [for an ALJ] to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1124. But plaintiff's reliance on *Blakenship* is misplaced.

In *Blakenship*, the ALJ discredited the *claimant's* subjective assertions of pain and psychological impairment because he failed to seek psychiatric treatment for his mental conditions. *Id.* Here, the issue is the supportability of Dr. Bral's opinion. Nothing in *Blakenship* suggests that, when mental disabilities are at issue, an ALJ may not consider a claimant's inconsistent treatment history with a treating source who provides a medical-source opinion. Indeed, plaintiff's reading of *Blakenship* conflicts with 20 C.F.R. § 404.1527(c)(2)(i), which allows an ALJ to consider the length and frequency of treatment with a treating physician in weighing an opinion from that physician. Thus, the ALJ had the discretion to consider Dr. Bral's sporadic treatment of plaintiff as one reason for giving her opinion little weight.

Plaintiff also argues that the ALJ "dismissed Dr. Bral's assessment largely because it was presented on a check-box form." ECF No. 10, PageID.3644. But that mischaracterizes the ALJ's stated reasons. The ALJ explained that Dr. Bral "completed a fill-in-the-blank form" that "*fail*[*ed*]

*to provide explanations or medical support for her assessed limitations*." ECF No. 6-5, PageID.1958 (emphasis added). And an ALJ may consider the format of a medical opinion. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) (the treating source's "checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds.").

Plaintiff next contends that the ALJ erred by not acknowledging that some neurological testing and a 2016 treatment note by a neurologist supported Dr. Bral's opinion. ECF No. 10, PageID.3644. But again, the "ALJ need not perform an exhaustive, step-by-step analysis of each factor." *Biestek*, 880 F.3d at 785. Rather, the ALJ fulfilled her duty by discussing the inconsistencies of Dr. Bral's opinion with the "medical record as a whole" in reaching her decision. ECF No. 6-5, PageID.1957-1958; *see Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) ("While the ALJ did not reference each factor, he did discuss the factor most important to this case, *i.e.*, the consistency (or lack thereof) of the doctors' opinions with the record as a whole."). The Court finds no error.

**D.**

Finally, plaintiff makes a scant argument that the ALJ failed to properly analyze Listing 12.04, which applies to depressive disorders. ECF

No. 10, PageID.3644-3646. She maintains that her mental impairments "met or medically equaled Listing 12.04 during the relevant period" and that the ALJ erred in finding otherwise. *Id.*, PageID.3645; ECF No. 6-5, PageID.1947-1949.

"A claimant must satisfy all of the criteria to meet the listing." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3)); *see also Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002) (the claimant bears the burden of showing that his or her impairments meet or equal a listing, and that any error on the part of the ALJ was not harmless). To support her argument that the ALJ committed reversible error, plaintiff "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).

Plaintiff's listing argument barely refers to evidence in the record. Rather, she relies on broad conclusions, such as, "Plaintiff consistently exhibited paranoia, hostility, irritability, and an inability to tolerate criticism or stress." ECF No. 10, PageID.3644-3645. And the Court has no obligation to scour the record on plaintiff's behalf to develop her arguments. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011).

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (cleaned up); *see also ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 583-84 (6th Cir. 2018) (same).

The Court thus finds that plaintiff has waived her argument that her impairments met or equaled Listing 12.04.

## IV. Conclusion

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 10), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 15), and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 15, 2026

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager